# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| **In re: Thomas G. Gialamas,** | ) | **Bankruptcy No. 18-13341** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |
| | ) | **Judge Lynch** |
| | ) | |
| | ) | |

## MEMORANDUM DECISION ON THE DEBTOR'S MOTION TO EXTEND THE EXCLUSIVE PERIODS TO FILE AND OBTAIN ACCEPTANCE OF A PLAN

The Bankruptcy Code gives the Debtor an exclusive 120-day period to file a proposed plan of reorganization. 11 U.S.C. § 1121(b). This case, which began as an involuntary Chapter 7 case, was converted to Chapter 11 on February 27, 2019. Accordingly, the Debtor now has through June 27, 2019, to file a plan and until August 26, 2019, to gain its acceptance. 11 U.S.C. § 1121(c). If not filed and accepted by those dates, or if a trustee is appointed, any party in interest may propose a plan. *Id.* The court "may for cause reduce or increase" the exclusivity period provided that (1) the 120-day filing period may not be extended beyond 18 months after the Chapter 11 order for relief and (2) the time to gain acceptance may not be extended beyond 20 months after the Chapter 11 order for relief. 11 U.S.C. § 1121(d). The Debtor asks to extend the exclusive time to file a plan through September 25, 2019, and to move the deadline for obtaining its acceptance through November 24, 2019. (ECF No. 214.) This is his first such request. For the reasons discussed below, Mr. Gialamis' request will be granted.

## DISCUSSION

Erick Hallick, a creditor and the defendant in a preference action brought by the Debtor, objects to the requested extension. an alleged preferential transfer, objects to the proposed extensions. The United States Trustee and the Unsecured Creditors Committee have both indicated no objection to the request, without prejudice to future requests for extension.[1]

The party seeking an extension of the exclusivity period bears the burden of demonstrating that requisite cause exists. *In re All Seasons Industries, Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). The statute does not define "cause," and the "decision to grant an extension of the 120–day period for filing a plan or the 180–day period for gaining acceptance to it is within the discretion of the bankruptcy judge." *In re Co. Store, Inc.*, No. 92-21810-11, 1992 WL 12003985, at *2 (Bankr. W.D. Wis. Oct. 5, 1992) (citing *In re All Seasons Industries, Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990)). The Fifth Circuit has noted that courts "should be mindful of the legislative goal behind § 1121." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 372 (5th Cir. 1987). Specifically, under the pre-1978 Bankruptcy Act, Chapter XI debtors had the sole right to propose a plan, which gave "the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors." *Id.* (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 174, 231 reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6191).

Section 1121 balances the interests of the debtor and concerns of creditors by

---

[1] During the hearing on this motion, Old Sauk Trails Park Limited Partnership, another party in interest, stated that it also supports the Debtor's request.

allowing "the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan" while ensuring "creditors will not endure unreasonable delay after a debtor files chapter 11." *In re Michigan Produce Haulers, Inc.*, 525 B.R. 408, 411-12 (Bankr. W.D. Mich. 2015) (internal citations omitted). In considering whether to extend a debtor's exclusivity periods, courts have typically considered factors including:

> (a) the size and complexity of the case;
> (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
> (c) the existence of good faith progress toward reorganization;
> (d) the fact that the debtor is paying its bills as they become due;
> (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
> (f) whether the debtor has made progress in negotiations with its creditors;
> (g) the amount of time that has elapsed in the case;
> (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
> (i) whether an unresolved contingency exists.

*In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006), clarified on denial of reconsideration, No. 02-41729, 2006 WL 2927222 (Bankr. S.D.N.Y. Oct. 10, 2006)).[2] This list of factors to be considered is non-exclusive. Not all factors are

---

[2] See also *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 643–44 (B.A.P. 8th Cir. 2003) (setting forth similar list of factors considered, including: "(1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure; (2) the need of the creditors' committee to negotiate with the debtor and the ability to prepare adequate information; (3) the existence of good faith progress towards reorganization; (4) the existence of an unresolved contingency; (5) the fact that the debtor is paying bills as they become due; (6) the length of previous extensions of exclusivity; (7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors; (8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; (9) the gross mismanagement of the debtor") (internal citations omitted).

relevant in every case or of equal weight, nor "is it simply a question of adding up the number of factors which weigh for and against an extension." *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003).

The Debtor principally justifies his request for extension by stating his hope that his adversary complaint against Hallick filed on March 16, 2019 can be resolved before he is required to submit his bankruptcy plan and disclosure statement and seek acceptance of the plan.  Mr. Hallick has filed a proof of claim in the bankruptcy for over $16.7 million which he asserts is secured by property including the Debtor's interest in the limited partnership.  In his adversary complaint, the Debtor alleges that Hallick obtained a judicial lien in the Debtor's interest in the limited partnership just under 90 days before the filing of the involuntary bankruptcy petition.  The preference action, which the Debtor describes as "fundamental" to his formulation of a plan, seeks to avoid the lien as a preferential transfer.  The Debtor argues that his limited partnership interest is his most valuable asset and as such, it is difficult to formulate a plan while its encumbered status remains unclear and while the extent that Mr. Hallick's claim can be treated as secured or unsecured remains unclear.  Additionally, the Debtor argues that the adversary may further assist in the formulation of the plan by resolving the Debtor's rights to $200,000 in funds currently being held in escrow.

The Debtor and Mr. Hallick have filed cross-motions for summary judgment in the adversary proceeding, each side arguing that there is no dispute of fact and the court may rule on the preference action as a pure dispute of law.  The court has set a

briefing schedule on the cross motions, with the final replies due on or before July 12, 2019. Accordingly, the Debtor has requested an extension of the time to file a plan through September 25, 2019, in the hope that the extension would permit the Debtor to prepare his plan after the court rules on the summary judgment motions.

The court finds that the Debtor has shown cause for the requested extension. The court agrees with Mr. Hallick that the mere fact that there is pending litigation between a debtor and a creditor will not always justify extension of the exclusivity periods.[3] Not every litigation must be resolved before a debtor can propose a plan or provide adequate information to creditors prior to confirmation. But here the litigation may have a drastic impact not only on the assets available to fund a reorganization but the allocation of payments to creditors. Preserving the preference action was apparently one of the principal motivations for the petitioning creditors in filing the involuntary petition that commenced this case, and the success or failure of that action may be determinative of whether unsecured creditors obtain any recovery at all. Both the United States Trustee and the Unsecured Creditors Committee have expressed no objection to the extension. Additionally, given the cross motions for summary judgment and this court's briefing schedule, there is a clear possibility that matter may be resolved within a short time. While Mr. Hallick notes the possibility of appeal or denial of both motions, by September it should be clear if the matter remains unresolved. In any event, this grant of this short extension should not be

---

[3] Indeed, through the 2005 amendments, Congress imposed firm limits on the length of time that courts can extend the exclusivity periods for filing and acceptance of a plan of 18 months and 20 months, respectively, from the Chapter 11 order for relief. 11 U.S.C. §1121(d).

taken to suggest that a future request will be as favorably received.

Nor has Mr. Hallick shown the Debtor's request for extension to have been made in bad faith, for dilatory purposes or for the purposes of obtaining undue leverage. The Objector admits that Mr. Gialamis has been able to pay his expenses as they come due. (Hallick's Objection, ECF No. 222, ¶ 14.) He has not shown that the Debtor is mismanaging the estate or that his or other creditor's interests will not be adequately protected during the brief extension periods.

As noted above, this is the first request for extension, and for a relatively short extension. It is apparent that the extension is reasonably tied to the briefing schedule the court set in the adversary proceeding. The docket also reveals that the Debtor has been active in this case since it converted to Chapter 11 in late February of this year. In the bankruptcy, Mr. Gialamis has filed schedules, applied for the employment of professionals, responded to three motions for stay relief and requested a claims bar date. In addition, he commenced his preference action against the Objector, and responded to three adversary proceedings filed against him – negotiating a settlement of one already. Indeed, while Mr. Hallick professes a vague concern that the extension of time might result in additional administrative costs, much of the Debtor's activity has been responding to matters raised by Mr. Hallick. For example, despite having joined as a petitioning creditor in the involuntary Chapter 7, the Objector filed a motion to dismiss the case on March 15, 2019, which he later withdrew on April 18, 2019, but only after the U.S. Trustee and the Debtor

filed objections and the court set a briefing schedule.[4]

While Hallick argues that the request for extension is somehow intended to "pressure" him into "giving in ... on his lien and other arguments" in the adversary, he has not explained how a three-month extension of the time to file a plan would have such effect. (Hallick's Objection, ECF No. 222, ¶ 17.) Both parties have filed cross-motions for summary judgment in the adversary proceeding and the court has already set a briefing schedule on the matter. While that briefing schedule does not preclude negotiation, it seems that at this point both parties have expressed their desire to place what they contend to be a purely legal issue in the hands of the court to resolve. Additionally, as a preference action, the Debtor has standing to assert the claim only in his capacity as debtor in possession. *See* 11 U.S.C. §§ 547 (giving "trustee" the power to avoid preferences), 1107(a) (giving powers of trustee to debtor in possession). Avoidance of a preferential security interest benefits unsecured creditors by increasing the amount of assets available for distribution, but generally increases the pool of unsecured creditors in an equal amount, and therefore the benefit does not directly accrue to the debtor. Balancing at least Mr. Hallick's vague concerns that the requested extension of the exclusivity period might pressure Hallick to concede in the preference action, of the exclusivity period is the risk that denial of the extension will pressure the Debtor to abandon or not fully fulfill his duty to his other creditors to pursue the preference claim.

---

[4] The same day, Mr. Hallick filed a motion for relief from stay and to compel abandonment of two real estate properties. The Debtor subsequently stipulated to abandonment of one of those properties, but both the Debtor and the Unsecured Creditors Committee have objected to relief for the other.

CONCLUSION

For the foregoing reasons, the Debtor's motion will be granted.[5]  A separate

order will be entered herewith to give effect to this determination.

DATE: June 27, 2019

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge

---

[5] In its Motion, the Debtor requested two different sets of dates for the extensions.  See Motion at 1 and 6.  Inasmuch as one of the dates requested on page 6 falls on a weekend, the Order accompanying this Memorandum Decision grants the extensions to the weekday dates proposed on the Motion's first page.